IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| SEBORIS BROOKS, | |
| Plaintiff, | CIVIL ACTION NO.: 5:23-cv-22 |
| v. | |
| WARDEN DANFORTH, et al., | |
| Defendants. | |

**O R D E R**

Defendants Danforth and Grady filed a Motion to Dismiss.  Doc. 28.  Plaintiff filed a Response, opposing Defendants' Motion.  Doc. 36.  For the following reasons, I **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.[1]  I further **DENY** Plaintiff leave to appeal *in forma pauperis*.

Plaintiff also filed a Motion for Discovery, doc. 27, and a "Motion to Amend to Admit Exhibits," doc. 37.  Because I am dismissing Plaintiff's Complaint in its entirety, I **DENY as moot** Plaintiff's Motion for Discovery and "Motion to Amend to Admit Exhibits."

**BACKGROUND**

Plaintiff asserts Eighth Amendment deliberate-indifference claims under 42 U.S.C. § 1983.  Doc. 1.  When Plaintiff was incarcerated at Macon State Prison in 2004, he was assigned a bottom-bunk profile due to previous injuries to his leg and hip.  Id. at 3.  At some

---

[1] Defendant Williams was unable to be served in this case.  Doc. 32.  The claims against Defendant Williams are due to be dismissed for the same reasons that the claims against Defendants Danforth and Grady (i.e., failure to exhaust administrative remedies) are due to be dismissed and because Defendant Williams has not been timely served.

point, Plaintiff was transferred from Macon State Prison to Coffee Correctional Facility ("CCF"). On February 10, 2021, Plaintiff was assigned a top bunk at an inmate at CCF. On April 6, 2021, Plaintiff fell while attempting to climb down from his top bunk.

Although an officer present at the scene called for medical attention, Plaintiff states it took between two to four hours for the medical staff to respond to the incident. Plaintiff was then transferred to a local hospital for treatment. At the hospital, a doctor informed Plaintiff he had injured his lower back and had torn cartilage in his right knee. Id. at 4. Plaintiff received a leg brace, crutches, and medication and was scheduled for an MRI. Id.

On November 5, 2024, Defendants filed a Motion to Dismiss. Doc. 28. Defendants argue Plaintiff failed to exhaust his administrative remedies. Id. at 5–9. Plaintiff filed a Response to Defendants' Motion to Dismiss, arguing that a prison's decision to not address the grievance because it was untimely does not bar the federal lawsuit. Doc. 36.

## DISCUSSION

Defendants argue Plaintiff's Complaint should be dismissed because Plaintiff did not exhaust his administrative remedies. Doc. 28. Plaintiff responds, arguing his Complaint is not barred. Doc. 36.

**I.      Prison Litigation Reform Act's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a

federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 578 U.S. 632, 639–40 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement).  Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of

administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.     Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015).

While exhaustion is a mandatory requirement for suing, one exception exists. Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under

the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 638; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'"))). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 642. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 642. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 644; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The

PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner, the Eleventh Circuit Court of Appeals laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at

6

1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").[2] However, if the issue of exhaustion is "intertwined with the merits of a claim protected by the Seventh Amendment," parties are entitled to a jury trial on that issue and dismissal is not appropriate. Perttu v. Richards, 605 U.S. ___, 145 S. Ct. 1793, 1800 (2025).

**III.    Applying Turner**

    **A.    The Georgia Department of Corrections' ("GDC") Administrative Remedies**

Coffee Correctional Facility, where these claims arose, utilizes the GDC procedures for prisoner grievances. Doc. 28 at 3. The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") 227.02. Doc. 28-2. Under SOP 227.02, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" that "personally affects the offender" and that is not explicitly listed in the SOP as a "non-grievable issue." Id. at 9.

---

[2] I acknowledge that parties must have a sufficient opportunity to develop the record before a court can resolve a disputed factual issue in a motion to dismiss. Bryant, 530 F.3d at 1376 & n.14. As explained below, I do not need to resolve any factual disputes because dismissal is appropriate under Turner step one. Furthermore, Plaintiff has not stated any need for discovery or further development of the record to address the exhaustion issue. Plaintiff did file a Motion for Discovery, doc. 27, but the discovery requests contained in that Motion relate to the merits of Plaintiff's claim, not exhaustion of administrative remedies.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal.  Id. at 13.  Under SOP 227.02, absent "good cause," original grievances must be filed within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance.  Id.  The complaint must be a single issue or incident.  Id.  Then, if an inmate is dissatisfied with the response or if the time allowed for the Warden's decision has expired, he may appeal the decision to the GDC Central Office.  Id. at 19.  An appeal must be filed within seven days of an inmate receiving the Warden's response.  Id.  The GDC Commissioner then has 120 days after receiving the appeal to deliver a decision to the inmate.  Id. at 20.  Only then is the grievance procedure complete.  Id.

### B.     Plaintiff Failed to Exhaust Available Administrative Remedies

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take the plaintiff's version of the facts as true."  Turner, 541 F.3d at 1080–82.

Defendants acknowledge that Plaintiff filed Grievance Number 323039, which contains the same allegations contained in Plaintiff's Complaint and Amended Complaint.  Doc. 28 at 4.  However, Defendants argue Grievance Number 323039 was untimely and Plaintiff never appealed the denial of the grievance.  Regarding untimeliness, Defendants argue that the grievance and Plaintiff's claims concern his assignment to a top bunk, which occurred on February 10, 2021.  Plaintiff did not file Grievance Number 323039 until April 13, 2021, after Plaintiff was discharged from the hospital and more than two months after he was assigned to a top bunk.  As to the appeal, Defendants note that Grievance Number 323039 was partially denied on May 21, 2021.  Defendants state Plaintiff did not appeal this partial denial or file any new or different grievance related to the top bunk assignment or his fall from the bunk.  Defendants

assert Plaintiff did not comply with the procedural rules and deadlines set forth in the GDC Grievance Policy and failed to fully exhaust his administrative remedies.

Plaintiff does not address any of Defendants' particular factual allegations. Plaintiff does not contend that the grievance was timely or that he appealed the partial denial of the grievance. Plaintiff only argues that a federal complaint cannot be barred based on an untimely grievance as long as an inmate fully exhausts his administrative remedies. Doc. 36 at 3–4. Plaintiff states that regardless of whether he followed the administrative procedures, he was placed in a grave situation. Id.

The parties' factual allegations do not conflict. Defendants explain that Plaintiff filed one grievance related to his assignment to a top bunk but the grievance was untimely. Plaintiff does not dispute this contention. Defendants also state Plaintiff did not appeal this grievance after it was partially denied. Plaintiff does not dispute that contention, either. Thus, there is no factual dispute, and I must consider how the grievance procedure applies to the facts Defendants allege.

Plaintiff plainly failed to fully exhaust his administrative remedies. Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92. Grievances must be filed within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance. Doc. 28-2 at 13. Plaintiff did not file his grievance concerning his top-bunk assignment until April 13, 2021, more than two months after the assignment. Therefore, Plaintiff failed to comply with the prison's grievance policy.[3]

---

[3] Plaintiff's reliance on Thomas v. Woolum, 337 F.3d 720, 723 (6th Cir. 2003), for the notion that untimely grievances are sufficient for exhaustion is misplaced. Thomas was abrogated by Woodford v. Ngo, 548 U.S. 81 (2006).

Even if Plaintiff's grievance were timely, he still failed to appeal the partial denial of the grievance. The GDC Grievance Procedure requires Plaintiff to file an appeal within seven days of receiving the Warden's response. Plaintiff fails to demonstrate that he even attempted to appeal the partial denial of his grievance. Since the undisputed facts establish Plaintiff failed to timely appeal according to the GDC grievance procedures, Plaintiff's Complaint is subject to dismissal at Turner step one. See Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Meadows, 418 F.3d at 1157)).

The facts as stated show Plaintiff failed to exhaust his administrative remedies. Accordingly, I **GRANT** Defendants' Motion to Dismiss and **DISMISS** Plaintiff's claims against Defendants Danforth and Grady.

## IV.     Leave to Appeal *in Forma Pauperis*

The Court also denies Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is appropriate to address that issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v.

Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, I **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case. I further **DENY** Plaintiff leave to appeal *in forma pauperis*. Plaintiff also filed a Motion for Discovery and a Motion to Amend to Admit Exhibits. Docs. 27, 37. Because I am dismissing Plaintiff's Complaint in its entirety, I **DENY as moot** Plaintiff's Motion for Discovery and Motion to Amend to Admit Exhibits.

**SO ORDERED**, this 16th day of September, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA